## M. H. FREEMAN ET AL V. MAGNOLIA PETROLEUM COMPANY ET AL.

No. 8061. Decided April 28, 1943.
Rehearing overruled June 9, 1943.
(171 S. W., 2d Series, 339.)

*T. R. Boone* and *Harvey Perry*, both of Wichita Falls, and *Jr. D. Richards*, of Dalhart, for petitioners.

The Court of Civil Appeals erred in holding that the lease in question was not a lease but was an absolute fee conveyance; and that the well in question was a producing well when it was admitted that no oil or gas had been produced, transported, or sold so as to yield a profit to either lessor or lessee; and that the provision for the payment of the $50.00 to declare a potential well a "producing well' was an absolute and unconditional agree-

ment on the part of the lessee, rather than an option, which had to be timely expressed before the expiration of the primary term in order to keep the lease in force and effect. Duff v. Dubose, 27 S. W. (2d) 122; Lone Star Gas Co. v. X-Ray Gas Co., 139 Texas 546, 164 S. W. (2d) 504; Zeppa v. Houston Oil Co., 113 S. W. (2d) 612.

*Walace Hawkins* and *Earl A. Brown*, both of Dallas, *Morgan, Culton, Morgan & Britain, Underwood, Johnson, Dooley & Wilson*, all of Amarillo, *Frank M. Tatum*, of Dalhart, *Dan Moody* and *J. B. Robertson*, of Austin, for Magnolia Petroleum Company and Hagy, Harrinton & Marsh, respondents.

*Don Emery* and *Rayburn L. Foster*, both of Bartlesville, Okla., *E. H. Foster*, of Amarillo, *Vinson, Elkins, Weems & Francis* and *Thomas Fletcher*, all of Houston, filed briefs and arguments as amici Curiae.

MR. JUDGE BREWSTER, of the Commission of Appeals, delivered the opinion for the Court.

This is a suit by petitioners to cancel an oil and gas lease of date April 7, 1930, covering 7,499 acres of land in Sherman and Hansford Counties, Texas. Respondents are the assignees of one Mager, original lessee. The provisions of the lease, relevant to the issues here, are as follows:

"2. Subject to the other provisions herein contained, which are not conditions, as is fully provided for in Article 8 hereafter, this lease shall remain in force for a term of ten years from this date (called 'primary term') and as long thereafter as oil, gas or other mineral is produced from said land.

"3. The royalties to be paid by lessee are: (a) on oil, one-eighth of that produced and saved from said land, same to be delivered at the wells or to the credit of lessor in the pipe line to which the wells may be connected; lessor's interest in either case to bear its proportion of any expenses for treating the oil to make it marketable as crude; (b) on gas, including casinghead gas and other vaporous or gaseous substances, produced from said land, as follows: In case lessee shall itself use such gas in the manufacture of gasoline, 1/8 of 25% of the market value at the plant of the gasoline manufactured therefrom, payable quarterly; quantity of product to be ascertained by lessee in a manner recognized in the industry; in case lessee shall sell such gas at the wells, 1/8 of the amount received and

collected by lessee from such sales; and in all cases when gas is sold or used off the premises, except residue gas from gas used in the manufacture of gasoline, the market price at the well of 1/8 of the raw gas so sold or used; a royalty of $50.00 per year on each gas well from which gas only is produced while gas therefrom is not sold or used off the premises, and while said royalty is so paid, said well shall be held to be a producing well under paragraph number 2 hereof; * * *.

"4. If operations for drilling or mining are not commenced on said land on or before one year from this date, this lease shall then terminate as to both parties, unless on or before such anniversary date lessee shall pay or tender to lessor, or to the credit of lessor, in First National Bank at Texhoma, Oklahoma, (which bank and its successors are lessor's agent and shall continue as the depository for all rentals payable hereunder, regardless of changes in ownership of said land or the rentals), the sum of Nine Hundred Thirty-seven & 37/100 Dollars ($937.37), (herein called rental), which shall cover the privilege of deferring commencement of such operations for a period of three (3) months. In like manner and upon like payments or tenders quarterly, the commencement of said operations may be further deferred for successive periods of the same number of months, each during the primary term. The payment or tender of rental may be made by the check or draft of lessee mailed or delivered to said Bank or lessor on or before the rental paying date. If such bank (or any successor bank) should fall, liquidate or be succeeded by another bank, or for any reason fail or refuse to accept rental, lessee shall not be held in default for failure to make such payment or tender of rental until thirty (30) days after lessor shall deliver to lessee a proper recordable instrument making another bank as agent to receive such payments or tenders. The down cash payment is consideration for this lease according to its terms, and shall not be allocated as mere rental for a period.

"5. If prior to discovery of oil or gas on said land lessee should drill and abandon a dry hole or holes thereon, or if after discovery of oil or gas the production thereof should cease from any cause, this lease shall not terminate if lessee commences additional drilling or re-working operations within sixty (60) days thereafter, or (if it be within the primary term) commences or resumes the payment or tender of rentals on or before the rental paying date next ensuing after the expiration of three months from date of completion and abandonment of said dry hole or holes or the cessation of production. If at the

expiration of the primary term oil or gas is not being produced on said land, but lessee is then engaged in operations for drilling, mining or re-working of any well or mine theeon, this lease shall remain in force so long as said operations are prosecuted with no cessation of more than thirty (30) consecutive days, and, if. they result in production, so long thereafter as oil or gas or other mineral is produced from said land. * * *

\* \* \* \*

"8. The covenants of lessee mentioned in this lease, as well as all implied covenants, are not to be understood as conditions, and the breach of one or all of same will not work a forfeiture, abandonment or termination of this lease except the failure to drill or pay rentals provided for in paragraph four (4) hereof.

"After discovery of oil, gas or other minerals upon said premises, the title to all minerals in and upon and underlying the surface of the land described in this lease shall remain and be bested in lessee and shall not revert to lessor nor end until there is a complete, absolute and intentional abandonment by lessee of each and all of the purposes, either expressed or implied, of this lease and every part and parcel of the lands described herein. Such abandonment is the only manner by which lessee's title to said minerals can be ended and title to said minerals be reinvested in lessor."

After overruling petitioners' motion for an instructed verdict and their motion for judgment *non obstante veredicto*, the trial court rendered judgment for respondents on jury answers to special issues. That judgment was affirmed by the Court of Civil Appeals at Amarillo. 165 S. W. (2d) 111.

Although five points of error are assigned, our decision will turn on the third, which is that the court below "erred in holding that the provision for the payment of the $50.00 to declare a potential well a 'producing well' was an absolute, and unconditional agreement on the part of the lessee, rather than an option, which had to be timely exercised, to-wit, before the expiration of the Primary Term, in order to keep the lease in force and effect."

We think the question is settled by the express terms of the lease. Paragraph 2 provides that the lease should remain in force for ten years from April 7, 1930, and as long thereafter

as oil, gas or other mineral is produced from the leased land. It is not claimed that any oil or "other mineral" was being produced therefrom on April 7, 1940, when the primary term ended. In fact, it affirmatively appears that none was produced at any time during the primary term. Therefore, it only remains to determine whether gas was being produced from the land at the close of the primary term so as to continue the lease in force.

On December 22, 1939, respondents completed a well on the lease. It yielded gas in large quantities, but none of it was ever sold or used off the leased premises. No other well was thereafter drilled or attempted to be drilled on the land. Under these facts, was gas being "produced from said land" on April 7, 1940? The answer is found in the language of paragraph 3 (b), as follows: "3. The royalties to be paid by lessee are: * * * * (b) on gas, * * * * a royalty of $50.00 per year on each gas well from which gas only is produced while gas therefrom is not sold or used off the premises, and *while said royalty is so paid, said well shall be held to be a producing well under paragraph 2 hereof.*" (Italics ours). Thus, in paragraph 2, the parties agree that the lease would end on April 7, 1940, unless gas was then being produced from the land. Then, in paragraph 3 (b), they say that a well from which gas is not used or sold off the leased premises will be regarded as a producer by virtue of lessee paying fifty dollars per year; that is, in clear and unequivocal language, they say that *while it is so paid* the well shall be held to be a producer, *under paragraph 2*. It necessarily follows, conversely, that while the royalty is not so paid, the well will not be held to be a producer under that paragraph.

Respondents did not pay the fifty dollars royalty on or before April 7, 1940. They tendered it more than four months thereafter, contending that they could pay it at any time within the year. Petitioners declined the tender on the ground that the lease had terminated on April 7, 1940.

This court has recently held that upon cessation of production after termination of the primary term, the lease automatically terminates. Watson v. Rochmill, 137 Texas, 565, 155 S. W. (2d) 783, 137 A. L. R. 1032. Here the parties agreed that if no gas was being produced on April 7, 1940, the lease should terminate. They further agreed that a gas well from which gas was not being sold or used off the premises was a producing well provided a royalty of fifty dollars was paid. Clearly, then, if the fifty dollars was not paid on or before April 7, 1940, gas was not being produced from the premises on that date, and the lease terminated for nonproduction. That is precisely what the

contracting parties said should follow, and they were privileged to define what they meant by the phrase "a producing well." If respondents had wanted to prevent lapsation of the lease for non production they could easily have done so by paying the fifty dollars on or before the last day of the primary term. They could thus have met the condition which they imposed upon themselves when they accepted assignment of the lease. For their failure to do so they have only themslves to blame. The lease lapsed as a matter of law when they so failed, and it could not be revived by their attempt to perform the condition more than four months after the contract said it should be performed. Watson v. Rochmill, supra; Garcia v. King et al, 139 Texas 578, 164 S. W. (2d) 509. See Bailey v. Williams (Civ. App.), 223 S. W. 311; Witherspoon et al v. Staley et al (Civ. App.), 156 S. W. 557 (er. ref.); White v. Dennis et ux (Civ. App.), 233 S. W. 373 (er. dism.).

Respondents stress the fact that paragraph 8, supra, provides that covenants of the lessee shall not be understood as conditions, breach of which would terminate the lease. It is sufficient to say that paragraph does not even purport to make any condition a covenant. It merely says that no covenant shall be regarded as a condition. To give the language any other construction mould be to ignore the distinction in the meaning of the two words; it would be to ignore the fact that express language of a least may make an agrement for development a condition as well as a covenant. Gulf Production Co. v. Kishi, 129 Texas 487, 103 S. W. (2d) 965. Moreover, despite the general provisions of that paragraph, it remained a question of law, to be determined under the express terms of the lease applicable thereto, as to which of the undertakings of the parties to the lease are covenants and which are conditions.

■ Respondents also insists that by reason of their discovery of gas they acquired title to all minerals underlying the leased land which could terminate only by their intentional abandonment of the land. In support of this contention, they refer to the last paragraph of the contract as we have quoted it above. We overrule the proposition. The paragraph in question must be held to contemplate a discovery and production of gas in *paying* quantities in order thereby to vest title to the minerals in respondents. Garcia et al v. King et al, supra; Duff v Du Bose et al (Com. App.) 27 S. W. (2d) 122.

It is unnecessary to consider the other points of error or the many other propositions advanced by both parties. The jury

findings are immaterial, since the trial court should have instructed a verdict for petitioners.

The judgments of the courts below are reversed, and judgment is here rendered for petitioners.

Opinion adopted by the Supreme Court April 28, 1943.

Rehearing overruled June 9, 1943.