**UNION OIL COMPANY OF CALIFORNIA,**
Appellant,

v.

**L. B. OGDEN et al., Appellees.**

No. 5057.

Court of Civil Appeals of Texas.

El Paso.

Jan. 19, 1955.

Rehearing Denied Feb. 16, 1955.

W. B. Browder, Jr., James G. Noland Stubbeman, McRae & Sealy, Midland, for appellant.

Max Ramsey, Andrews, Henry Russell, Pecos, Thornton Hardie, Jr., Turpin, Kerr & Smith, Midland, for appellees.

McGILL, Justice.

This was a suit to cancel an oil and gas lease executed by Belle Ogden individually and as independent executrix as lessor, to Union Oil Company of California as lessee. Appellees, who are the heirs and devisees of Belle Ogden, deceased, were plaintiffs, and the Union Oil Company of California was one of the defendants. The lease was dated February 26, 1943. Among other parties defendant was Deep Rock Oil Corporation. This defendant filed a cross-action against Union Oil Company of California in which it sought to cancel a lease executed by it to the Union Oil Company dated March 9, 1943. It was the contention of both plaintiffs and cross-plaintiff that the respective leases had terminated by their own terms and were a cloud on plaintiffs' title to the property leased, i. e., the Northwest ¼ and the West 30 acres of the North 70 acres of the east half of Section 6, Block A-46, P. S. L. Survey in Andrews County. Trial was to a jury. On answers to special issues the court rendered judgment cancelling both leases and quieting plaintiffs' and cross-plaintiff's title to said property as against all claims of the Union Oil Company of California. We shall hereafter refer to said leases as the Ogden lease and the Deep Rock lease respectively.

■ The Ogden lease is in the ordinary form and grants to the Union Oil Company the land above described for the purpose and with the exclusive right of exploring, drilling, mining and operating for production and owning oil, gas, sulphur and all other minerals. It refers to the land as comprising 190 acres and has the following provisions:

"2. This lease shall be for a term of Five (5) years from this date (called "primary term"), and so long thereafter as oil, gas, sulphur, or other mineral is produced from said land, or drilling, or reworking operations are prosecuted, as is hereinafter provided."

Paragraph 3(b): "If while this lease is in effect, oil or gas be discovered on said land which cannot be profitably produced for lack of a market at the well or wells, Lessee may pay to Lessor $100.00 as royalty for each such well, on or before the first day of January of each year after production thereof ceases for lack of a market, until the production thereof can be profitably marketed by Lessee, and while such royalty is so paid, such well or wells shall be considered as producing in commercial quantities for all purposes hereunder."

"6.: If at the expiration of the primary term of this lease oil, gas, sulphur or other mineral is not being produced on said land, but Lessee on or before that date commences reworking operations or operations for the drilling of a well in search of such products, then this lease shall continue in force so long as such operations are being continuously prosecuted on said land; and such operations shall be considered to be continuously prosecuted if not more than ninety (90) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling or reworking of a subsequent well, if, as a result of any such operations, oil, gas, sulphur or other minerals be found and produced, or the production of any of the same be restored, this lease shall continue in force so long as any of them is produced."

"17: Anything hereinbefore contained to the contrary, it is expressly provided as follows:

"(a) If at any time this lease should be held by production and if the royalties paid lessor thereunder should for any year period be less than the annual delay rental hereinbefore provided for, then lessee must pay lessor such additional money during each such one year period as may be necessary so that each year during the life of this lease lessor shall receive as delay rental or royalties, or as a combination of the

two, the minimum of the annual delay rental hereinbefore provided for."

"(b) If commercial production in paying quantities should be obtained on the hereinbefore described land under this lease, then this lease contemplates the full prospecting and developing for oil and gas of the land hereby leased, including the putting down of as many wells as the facts justify. The Lessee shall adequately protect the oil and gas under the above described land from drainage from the adjacent lands or leases. Neither the bonus, delay rentals, or royalties paid or to be paid hereunder shall relieve Lessee from the obligations herein expressed."

The Ogdens owned an undivided ⅝ interest in the Northwest ¼ of Section 6, and an undivided ½ interest in the west 30 acres of the north 70 acres out of the east half of Section 6, and Deep Rock owned and undivided ¹³⁄₆₄ interest in all the property leased. Most of the facts are covered by stipulation of the parties. On February 15, 1948, Union Oil Company of California commenced the drilling of a well for oil or gas on the leased property, and gas was discovered and the well completed on February 24, 1948, within the primary term of the lease. This well had a potential capacity of 142,000 cubic feet of gas per day. Appellant made tests of the well up to April 26, 1948. The well was then shut in continuously until December 21, 1949, when connection was made to the well with the gathering lines of the Empire Southern Gas Company, and a market for the gas was established. The jury found that there was no market for the gas at the well when it was completed. The well was approximately one-half mile from the connecting lines of the Empire Southern Gas Company, which was the only available market. In order to secure a purchaser for the gas Union Oil Company paid $2,179.17 for construction and installation of a gas line from the well to the gathering lines of the Empire Southern Gas Company. However, the jury found that the Union

Oil Company of California failed to obtain a market for the gas discovered within a reasonable time after such discovery. We may assume that under paragraph 2 of the lease production in commercial quantities is required to prolong the lease. The jury found in answer to Special Issue No. 1 that the gas well completed by defendant Union Oil Company on February 24, 1948 was not capable of producing gas in commercial quantities. As a matter of law, under the undisputed evidence, this well was capable of producing in commercial quantities, since it was shown beyond issue that defendant realized a small profit from operation of the well. Cowden v. General Crude Oil Co., Tex.Civ.App., 217 S.W.2d 109.

■■ Under the express terms of the Ogden lease, the above jury finding did not justify its cancellation. Gas was discovered during the primary term of the lease. Under the jury finding there was no market for it at the well, therefore under paragraph 3–b the gas could not be profitably produced for lack of a market at the well, and the lessee was given an option to pay lessor $100 as royalty for the well on or before the first day of January of each year when there was no production, for lack of a market, until production could be profitably marketed by lessee. We think this is a proper construction of paragraph 3–b. It would be a narrow construction indeed which would deny the right to pay the royalty because there had been no production and therefore production could not have ceased. Construing the instrument as a whole we think it clear that the parties intended that the lease might be kept in force by a payment of the stipulated royalty in lieu of production, otherwise the language

"and while such royalty is so paid such well or wells shall be considered as producing in commercial quantities *for all purposes hereunder*"

would be meaningless. Appellee would change this language to read "for all pur-

poses other than as provided by Section 2 hereof." No such construction is warranted. Lack of a market was the very thing provided for by paragraph 3–b of the lease. Any other construction would nullify this paragraph. "As men bind themselves so shall they be bound" is a fundamental rule of construction. We therefore hold that the court erred in cancelling the Ogden lease.

 The terms of the Deep Rock lease are practically the same as those contained in the Ogden lease, except that the Deep Rock lease does not contain the shut-in royalty clause. It is undisputed that there was no oil or gas being produced from the lease in question at the expiration of the five-year term. Ordinarily a lease would terminate under such circumstances. However, in this case gas had been discovered prior to the end of the primary term and such gas was in paying quantities. Under such circumstances the lessee should have a reasonable time to market the gas, even though the time required should extend beyond the primary term. This principle of law presupposes that a market exists, either at the well or at some accessible place. The evidence is uncontroverted that there was no market for gas at the well. There is evidence that there was a market for gas about one-half mile from the well, with the Empire Southern Gas Company. In order for appellant to avail itself of this market it was necessary for it to lay a line to the line of the Empire Southern Gas Company. The reasonable time appellant has to market its gas should be considered as the reasonable time it would take appellant to lay a line from its well to the only available market. It was incumbent upon appellant under the circumstances to forthwith begin operations for laying the line and continue such operations with reasonable diligence and dispatch until the gas reached the market. At the expiration of the primary term and at the end of the operation of completing the well and testing same, no purchaser of gas was making any effort to bring a line to the well, and appellant was doing nothing toward transporting the gas from the well to the only available market. Under this state of facts it must be held as a matter of law that the Deep Rock lease terminated under its own terms for non-production of oil and gas. Watson v. Rochmill, 137 Tex. 565, 155 S.W.2d 783, 137 A.L.R. 1032; Freeman v. Magnolia Petroleum Co., 141 Tex. 274, 171 S.W.2d 339; Stanolind Oil & Gas Co. v. Barnhill, Tex.Civ.App., 107 S.W.2d 746, wr. ref.; Garcia v. King, 139 Tex. 578, 164 S.W.2d 509; Cox v. Miller, Tex.Civ.App., 184 S.W.2d 323, Ref.

In answer to Special Issue No. 6 the jury found that appellant failed to obtain a market for the gas discovered within a reasonable time. The letter of July 13, 1948, from Deep Rock Oil Company to appellant did not excuse appellant from further effort toward marketing the gas. On June 3, 1948, appellant wrote appellee Deep Rock Oil Corporation as follows:

"Deep Rock Oil Corporation
"Atlas Life Building
"Tulsa 2, Okla.

　　　　Re: WT–529–A, Belle Ogden,
　　　　　　Andrews County, Texas.
"Gentlemen:

"We wish to acknowledge receipt of your letter dated May 27th, 1948, inquiring about the Ogden Gas well recently completed by the Union Oil Company of California.

"This well was completed as a producing gas well. However, we have been unable to secure a pipe line company to purchase the gas. Therefore we are going to circulate division orders for execution, based on the shut-in gas well clause contained in our lease.

"As soon as we have accomplished these division orders we will forward one to your company for execution.

"Yours very truly,
"Union Oil Company of California,
"Robert L. Trimble, Lease Man."

and on June 23, 1948, appellant again wrote appellee Deep Rock Oil Corporation as follows:

"Deep Rock Oil Corporation
"Atlas Life Building,
"Tulsa 2, Oklahoma
 "Re: Wt–529–B, Deep Rock Oil Corporation, Andrews County, Texas.

"Gentlemen:

"On March 9, 1943, your Company executed an oil and gas lease to the Union Oil Company of California, having a primary term of five years, covering the NW/4 of Section 6, and the W. 30 acres of the N. 70 acres of the E/2 of Section 6, all in Block A–46, P.S.L., Andrews County, Texas. The Union Oil Company has five leases covering Section 6 which comprises a total of 166.30 net acres. Out of this amount the lease executed by your company covers 38.60 net acres.

"On February 24, 1948, we completed a gas producing well, but up until this date we have not been able to secure a market for the gas at the well. For this reason we are enclosing an amendment which in effect would permit Union Oil Company of California to pay to the Deep Rock Oil Corporation the equivalent of the delay rental as a royalty until such time that we can secure a market for the gas.

"After your company has had time to consider this agreement, and if they feel that it is agreeable to execute the same, we would appreciate it if you would return the instrument to us so we can start our payments.

"Thanking you for your cooperation in this matter, we remain

 "Yours very truly,
 "Union Oil Company of California
 "Robert L. Trimble, Lease Man."

It is noted from the first letter that appellant as late as June 3, 1948, was laboring under the impression that its lease with the Deep Rock contained a shut-in gas royalty clause as was contained in the Ogden lease, and as was contained in all the other leases covering the tract of land in question. This mistaken assumption might account for appellant's failure to immediately begin laying a gas line to that of the Empire Southern Gas Company, if it had intended to prevent the termination of the Deep Rock lease. At any rate the second letter is practically an admission on the part of appellant that its lease with Deep Rock had terminated and would be of no force and effect unless Deep Rock signed the agreement enclosed in said letter. Incidentally, the agreement enclosed was not to become effective as of the date signed, but was to be effective on or before March 9, 1948, the date of the end of the primary term of the lease in question.

The letter of July 13, 1948, from Deep Rock to appellant Union Oil Company of California, is as follows:

"Union Oil Company of California
"Midland, Texas.
"To the attention of Mr. Robert L. Trimble.

"Gentlemen: (Re: Land in question)

"We have your letter of June 23 enclosing an agreement for execution by us in connection with the shut-in gas well which you have taken on the above mentioned tract of land. We have taken this matter into consideration and we do not feel that we can accept the agreement which you forwarded to us.

"Since we decline to sign this instrument, it follows that the oil and gas lease which we executed in your favor under date of March 9, 1943, has expired by its terms.

 "Very truly yours,
 "Deep Rock Oil Corporation,
 "Wesley G. Gish, Vice-President,
 "Land & Exploration Department."

It will be noted that in the first letter written by appellant to Deep Rock that appellant was relying on its shut-in clause to keep the lease in force. The second let-

ter indicates that to revive the lease it would be necessary to get a shut-in clause agreement signed by the Deep Rock Company. The answer of Deep Rock merely concluded that since there was no shut-in clause contained in its lease, and since it was not willing to sign at the request of appellant the shut-in clause agreement which reverted back to the primary term, that the lease had terminated by its own terms. There was no demand for a release, neither was there any demand that appellant give up the premises. In other words, the appellant had led appellee Deep Rock to believe that it considered its lease terminated, and Deep Rock was merely agreeing with the conclusion that appellant had reached. We do not know what position Deep Rock would have taken if at the time appellant had advised that it considered its lease was in force, even without the shut-in clause. The case of Adams v. Cannan, Tex.Civ.App., 253 S.W.2d 948, 951, refused, wherein a letter was relied upon as excusing the failure to resume operations on an oil and gas lease, such letter was much stronger than the one in question. In that case the court had this to say:

"In the briefs some distinction is suggested between forfeiture cases, where notice is necessary to terminate an estate, and a lease-hold interest which expires by the terms of limitation contained in the lease. We are here concerned with the latter type of estate, and it is sufficient to say that for the doctrine of estoppel to apply, as contended for by appellees, it is necessary that the lease be subsisting and that the notice of claim asserted against it be a clear, unequivocal challenge to the lessee's title in and to his interest created by the lease. The doctrine applies when the lessor takes the position and makes the same known to the lessee (or his assignees), that he, the lessor, is the owner of the property to the exclusion of all rights formerly held or claimed by the lessee. For this purpose, the filing of a suit asserting the claim, or the giving of an unequivocal notice, may be sufficient. * * *

"We do not regard the letter received by appellees on June 27, 1950, as presenting a clear, unequivocal challenge to lessees' title which is an essential basis of the doctrine relied upon. Although a release of the oil and gas lease was requested and there was some evidence that Adams had considered leasing the property to the Texas Company, * * * the letter itself does not purport to be a firm declaration of a position or contention that Adams held title to the premises involved to the exclusion of all rights of the appellees."

It is ordered that the judgment be reversed and rendered insofar as it cancels the Ogden lease, and that insofar as it cancels the Deep Rock lease it be in all respects affirmed.

Affirmed in part; reversed and rendered in part.

### On Motions for Rehearing.

At the request of appellees we make the following findings of fact. The parties stipulated:

"That on July 20, 1948, Union Oil Company of California tendered to plaintiffs or their predecessors in title an annual payment of $60.53, under the provisions of pararagraph 3 of said lease, and thereafter each year to date Union Oil Company of California has tendered to plaintiffs and their predecessors in title a like payment under paragraph 3 and paragraph 17(a) of said lease."

"That all tenders on and after July 20, 1948, of payment under the provisions of said lease have been rejected by the plaintiffs."

We find as a fact that as shown by such stipulations the Union Oil Company of California did not tender payment of the shut-in royalty provided for in the Ogden

lease until after the end of the primary term of the lease, February 26, 1949, but that at all relevant times such tenders of payment were made after the expiration of the primary term of the lease, but before the first of January of each year as provided in paragraphs 3(b) and 17(a) of the lease.

The motions for rehearing are overruled.