ELDO DOTY *et al.*, Plaintiffs-Appellees, *v.* KEY OIL, INC., *et al.*, Defendants-Appellants.

Fifth District     No. 79-460

Opinion filed April 9, 1980.

H. Carroll Bayler, of Louisville, for appellants.

Burnside, Dees and Johnston, of Vandalia, for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant Key Oil, Inc., appeals from a judgment of the Circuit Court of Fayette County declaring terminated an oil and gas lease and ordering it cancelled as a cloud upon the title of the plaintiff-lessors, Eldo and Rosa Doty. Contrary to the trial court's conclusion that the lease expired by its own terms, defendant contends that the lease remained in force under the extension provision of the "shut-in" clause. The lease in question was executed on February 12, 1976. Key Oil, Inc., acquired the lessee's interest by assignment on February 7, 1977.

The habendum clause of the lease provided that "subject to other provisions herein contained, this lease shall remain in force for a term of 1 year from this date (called the 'primary term'), and as long thereafter as oil, liquid hydrocarbons, gas or their respective constituent products, or any of them is produced from said land * * *." Other paragraphs provided for payment of one-eighth royalties on oil and gas produced and sold.

Paragraph 3(c) provided:

"If at any time while there is a gas well or wells on the above land (for purposes of this clause (c) the term 'gas well' shall include wells capable of producing natural gas, condensate, distillate or

any gaseous substance and wells classified as gas wells by any governmental authority) such well or wells are shut in, and if this *lease is not continued in force by some other provision hereof,* then it shall nevertheless continue in force for a period of ninety (90) days from the date such well or wells are shut in, and before the expiration of any such ninety day (90-day) period, lessee or any assignee hereunder may pay or tender an advance annual royalty payment of Fifty Dollars ($50.00) for each such well, and if such payment or tender is made, this lease shall continue in force and it shall be considered that gas is being produced from the leased premises in paying quantities within the meaning of paragraph 2 hereof for one (1) year from the date such payment is made, and in like manner subsequent advance royalty payments may be made or tendered * * *."

Paragraph 5 provided that if oil or gas was not being produced at the end of the primary term "but lessee is then engaged in operations for drilling, mining, or reworking" of any well, the lease would remain in force for so long as these operations were conducted without cessation for more than 60 days and for so long thereafter as oil and gas were produced.

The undisputed evidence was that Key Oil conducted drilling operations from February 12, 1977, to March 26, 1977. Well completion was begun about two months later, and on July 26, 1977, gas was discovered, apparently in significant quantities. During September of 1977 the well was fitted with equipment for production of oil (*e.g.,* gas separator, flow lines, oil tank). From October 11, 1977, to October 10, 1978, the gas was flared, and an employee of Key Oil checked the tank daily for oil; no oil was produced.

After the lessors demanded release of the lease, Key Oil conducted further unsuccessful oil production operations on October 10, 1978. Lessors filed their complaint on October 24, 1978. Key Oil "shut in" the well with a temporary, drillable plug on November 2, 1978. Lessors refused Key Oil's tender of $50 on November 18, 1978.

James Gray, secretary of Key Oil, testified that gas from the well could not be profitably marketed on July 27, 1977, when it was discovered, because the nearest pipeline was five miles from the well. At the time of trial, the pipeline had been extended to a leasehold about 1½ miles from the instant well.

After closing arguments, the trial court commented that the flaring of the well appeared to be inconsistent with an intention to produce gas at some later date. After taking the matter under advisement, the court found that the lease had expired by its own terms. The court entered judgment declaring the lease terminated and ordering it cancelled.

At issue here is the so-called shut-in provision of the lease. The term "shut in" refers to the plugging of a well capable of producing gas. Professor Summers discusses the practical considerations involved:

> "Oil is of such a nature that it need not be transported to market through a pipe line, but may be taken from the ground and stored in tanks to await shipment by rail or truck to an ever-ready market. But the only storage for gas is the stratum in which it is found." (2 Summers, Oil and Gas §299, at 222-23 (1959).)

By complying with the terms of the shut-in clause, the lessee may procure extension of the lease beyond the primary term even though actual production of gas under the habendum clause is impossible for lack of a pipeline:

> "The shut-in-royalty clause, found in most oil and gas leases, expressly qualifies the rule of construction that a lease terminates at the end of the primary term unless there is production and permits a lessee who has discovered gas in paying quantities during the primary term for which there is no market to keep the lease alive by the payment of a fixed money royalty." 2 Summers, Oil and Gas §299, at 226 (1959).

On appeal, Key Oil argues that its shutting in of the well on November 2, 1978, and tender of the $50 on November 18, 1978, were sufficient to extend the lease for one year under the terms of the shut-in clause, paragraph 3(c) of the lease. In considering this contention, it may be assumed Key Oil's drilling and well completion operations from February 12, 1977, to October 11, 1977, effectively extended the lease under paragraph 5. However, no further "drilling, mining or reworking" was conducted between October 11, 1977, and October 10, 1978.

Nor did the discovery of gas and flaring of the well constitute "production" sufficient to extend the lease under the habendum clause. The courts have generally held that the production necessary to extend the lease must be in paying quantities, even though the habendum clause does not use the term "paying quantities." (2 Summers, Oil and Gas §298, at 217 (1959).) In Illinois, a contrary position was taken in *Gillespie v. Ohio Oil Co.* (1913), 260 Ill. 169, 102 N.E. 1043, where a lease for a five-year term "and so long thereafter as oil or gas is produced" was held to have been effectively extended by the continuous pumping of oil, even though the quantity produced was so small as to make the venture unprofitable.

For two reasons, *Gillespie* is not controlling here. First, while the instant habendum clause did not expressly require production in paying quantities for extension of the lease beyond the primary term, the shut-in clause provided that if a well capable of producing gas was shut in and $50 was tendered by the lessee, the lease would continue in force, and it

would be considered "that gas is being produced from the leased premises in paying quantities within the meaning of paragraph 2" (the habendum clause). These provisions demonstrate the parties' intent that the production of gas had to be production in paying quantities in order to extend the lease under the habendum clause. Short of such production, the lessee could only extend the lease by compliance with the terms of the shut-in clause.

■■ Secondly, *Gillespie* is not controlling here because the mere flaring of the instant well was not production in the same sense that the pumping of even a small quantity of oil into a tank would constitute production. Even the furnishing of free gas to the lessor for domestic use has been held not to constitute production within the meaning of the habendum clause. (*Metz v. Doss* (1969), 114 Ill. App. 2d 195, 252 N.E.2d 410.) In so holding, the court reasoned as follows:

> "The purpose of an oil and gas lease is to obtain production. Unless lessee obtains production, he cannot recover his drilling expense. Lessor depends upon production for receipt of the royalty provided in the lease. This purpose can only be accomplished if the production which can keep the lease effective for an indefinite future period is production in the ordinary sense of the term, and hence results in royalties to the lessor." (114 Ill. App. 2d 195, 198, 252 N.E.2d 410, 412.)

As noted by the trial court, the flaring of the instant well, during the time that Key Oil was attempting to produce oil, appeared to be inconsistent with an intention to produce gas. Therefore, the lease was not extended under the habendum clause for the simple reason that there was no production whatsoever, in any accepted sense of the term.

The above discussion establishes that no provision other than the shut-in clause served to extend the lease beyond October 11, 1977. However, Key Oil did not actually shut in the well until November 2, 1978. Therefore, the only issue is whether the lease was extended under the shut-in clause prior to the actual shutting in by the mere existence of a well capable of producing gas.

In reviewing the authorities, including those cited by Professor Summers in his discussion of the shut-in-royalty clause, we have found no case directly on point. In *Lamczyk v. Allen* (1956), 8 Ill. 2d 547, 134 N.E.2d 753, the shut-in-royalty clause provided for extension of the lease beyond the primary term by payment of $50 where gas was found but not sold. Gas was discovered during the primary term, and the well was capped. The lessees engaged in negotiations to market the gas, but did not tender the shut-in royalty, and the lease expired. The lessees contended that they were under no duty to pay the shut-in royalty where they had diligently sought to procure a market for the gas. However, the

court held that the provision of the lease requiring the payment of the shut-in royalty was clear and direct, and that payment of the royalty was necessary to keep the lease alive where gas was found but not sold.

Other courts have likewise held that to utilize the shut-in clause to save the lease from termination the lessee must pay the shut-in royalty prior to the time that the lease would otherwise expire under the habendum clause and its associated savings clauses. (*Greer v. Salmon* (1970), 82 N.M. 245, 479 P.2d 294; *Freeman v. Magnolia Petroleum Co.* (1943), 141 Tex. 339, 171 S.W.2d 339; Annot., 96 A.L.R.2d 345 (1964).) In *Greer*, the shut-in clause was held to be a condition, rather than a covenant which would have created a firm obligation to pay the shut-in royalty, and, therefore, the lessee's failure to pay timely the shut-in royalty triggered the automatic termination provision of the habendum clause. Also, both *Greer* and *Freeman* held that a late payment or tender of the shut-in royalty cannot revive the lease once it has expired by its own terms.

The above authorities are concerned with the necessity and timeliness of payment of the shut-in royalty, while the instant case involves the timeliness of the shutting in itself. However, these authorities are instructive in that they demonstrate that the mere existence of a well capable of producing gas on the leasehold is not enough to extend the lease until such time as the lessee should choose to comply fully with the requirements of the shut-in clause. The instant shut-in clause required that a well capable of producing gas in fact be shut in as a prerequisite to extension of the lease under the terms of that clause. Because Key Oil failed to shut in the well prior to the expiration of the lease under its other provisions, the lease terminated.

Had Key Oil shut in the well upon the discovery of gas and tendered the $50 within 90 days, the lease would have been extended under the shut-in clause. Instead, Key Oil unsuccessfully attempted to produce oil and allowed a year to pass without conducting any operations on the leasehold sufficient to prevent expiration of the lease. Having expired by its own terms, the lease could not be revived by shutting in and tender of $50. Key Oil emphasizes the fact that it did not abandon the lease. However, because the lease expired by its own terms, no issue of abandonment is presented.

We therefore hold that the mere existence of a well capable of producing gas did not extend the lease, and the shutting in of the well and tender of $50 has no effect where the lease had already expired.

The judgment of the Circuit Court of Fayette County is affirmed.

Affirmed.

HARRISON and SPOMER, JJ., concurring.