Dan RILEY, Trustee, Appellant,

v.

Ralph H. MERIWETHER, et al., Appellees.

No. 08–89–00164–CV.

Court of Appeals of Texas, El Paso.

Nov. 22, 1989.

Rehearing Overruled Dec. 27, 1989.

David G. Stubbeman, Abilene, for appellant.

Tom Scott, Gregg Owens, Shane R. Spear, Bullock, Scott, Neisig & Owens, Midland, for appellees.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

FULLER, Justice.

In a declaratory judgment action, the Appellees as assignors sought to have the Corrected Assignment of leasehold interest declared terminated. Trial was to a jury, and the trial court, after disregarding certain answers by the jury, entered judgment for the Appellees resulting in termination of the estate represented by the Corrected Assignment. We affirm.

The controversy involves an instrument titled "Corrected Assignment" dated February 17, 1980, in which Appellees assigned to Wiggins Oil Company certain oil and gas leasehold estates in Crockett County, Texas, representing some nine separate tracts of land. Appellant Dan Riley was sued in his capacity as Trustee for Crockett Gathering, Ltd., the successor assignee to the assignee named in the Corrected Assignment. Appellees are the assignors and successors in interest to the assignors named in the Corrected Assignment.

Two previous assignments, which did not have shut-in clauses, led up to the Corrected Assignment. In compliance with the terms of the Corrected Assignment, nine wells were drilled. The Corrected Assignment provided that it would terminate if either a new well was not *commenced* within ninety days after the cessation of the drilling program or in sixty days after the last well was *completed* under the program, one of the tracts was not producing gas. The evidence showed that no oil or gas was produced from the wells located on the tracts from December 1, 1985 through January 1, 1987, and that no oil or gas was sold during this same time period. No actual drilling operations were conducted on the land during this same time period, only maintenance and periodic checking. Therefore, the gas wells were shut-in for about thirteen months. While all the base leases contained shut-in royalty provisions, the Corrected Assignment did not have such a provision and, therefore, the assignors under the Corrected Assignment did not receive shut-in royalty payments.

At the close of the evidence, the trial court denied Appellees' and Appellant's motions for instructed verdict and submitted the charge to the jury. The jury findings were: (1) There had been neither production from nor operations for production on the nine tracts during the critical period stated in the Corrected Assignment; (2) that Appellees were not estopped to assert that the Corrected Assignment had terminated; (3) that Appellees had waived their right to complain that the Corrected Assignment had terminated; (4) and that during the time the wells were shut-in, it was possible to produce gas in paying quantities.

The jury also determined the amount of reasonable attorney's fees through the trial court and appeal for Appellant's and Appellees' attorneys.

The trial court set aside the jury's answer that Appellees had waived their complaint that the Corrected Assignment had terminated. He then entered judgment for the Appellees, the effect of which was to terminate the estate created by the Cor-

rected Assignment. Appellant's Motion for New Trial was overruled by operation of law.

Appellant brings forward fifteen points of error challenging the trial court's actions as well as the jury's findings. We shall then discuss the points but not necessarily in the order presented by the Appellant.

■ As to the points of error that deal with no evidence or the legal insufficiency challenge, we must examine only that evidence and reasonable inferences therefrom, which when viewed in the most favorable light, support the verdict. If the favorable evidence amounts to more than a mere scintilla, which is more than a mere suspicion, then the legal sufficiency challenge must fail. *Stafford v. Stafford,* 726 S.W.2d 14 (Tex.1987); *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61 (Tex.1983). If both legal and factual sufficiency points are raised, this Court should rule on the legal insufficiency points first. *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400, 401 (Tex.1981). When a jury finding has support in the evidence, a trial court may not render a judgment n.o.v., even if the great weight and preponderance of the evidence may be to the contrary. *Gulf, Colorado & Santa Fe Railway Company v. Deen,* 158 Tex. 466, 312 S.W.2d 933 (1958), *cert. denied,* 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105 (1958).

In viewing the factual sufficiency challenge, this Court must review all of the evidence and the resulting inferences therefrom, and the challenge should be sustained only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly unjust and wrong. *Cain v. Bain,* 709 S.W.2d 175 (Tex.1986).

### POINTS OF ERROR

Point of Error No. Three asserts the trial court erred in disregarding the jury's answer to Question No. Three concerning waiver.

■ Prior to trial, the court made a finding that the Corrected Assignment was unambiguous which in effect was a determination by the trial judge that the reference to prior leases in the Corrected Assignment did not preserve the assignment by payment of shut-in royalties. The Appellant contended that Appellees had waived any right to termination of the assignment. Question No. Three submitted to the jury and answered favorably for the Appellant was:

> Do you find from a preponderance of the evidence that Plaintiffs waived their right, if any, to complain that the Corrected Assignment had terminated, if it did terminate.
>
> You are instructed that a person "waives" a right or privilege when he intentionally abandons a known right or privilege or intentionally engages in conduct inconsistent with claiming such right or privilege.
>
> Answer "Yes" or "No."
>
> ANSWER: Yes.

The Appellant complains of the trial court's action in disregarding this answer of the jury.

■ Waiver can be inferred from intentional conduct which is inconsistent with claiming a known right. *Munster Steel Company v. Travelers Indemnity Company,* 620 S.W.2d 771, 772 (Tex.Civ.App.— Dallas 1981, no writ). The following elements must be met in order to find waiver: (1) A right must exist at the time of the waiver, (2) the party who is accused of waiver must have constructive or actual knowledge of the right in question, and (3) the party intended to relinquish its right. *Pennzoil v. Socony Mobil Oil Company,* 421 S.W.2d 416, 423 (Tex.Civ.App.—El Paso 1967, writ dism'd). We do not agree with Appellant that there was evidence of waiver. Appellant points to several factors including a letter from Appellees' lawyer to Appellant's predecessor in title, but a review of that letter does not support a waiver of any rights. The letter points to the fact that the wells were shut-in and states that the Corrected Assignment was for a fixed term ending November 15, 1980, and provided for a defeasible fee estate requiring production from each tract in order to remain intact. This letter was dated April

18, 1986, and the wells at that time had been shut-in approximately four and one-half months.

■ The Corrected Assignment provided:

Sixty days after the completion of the last well drilled under the drilling program ... this assignment shall terminate as to, and Assignee shall reassign to Assignor, all interest in the Land above described ... which are not then producing, and upon cessation of production and the plugging of any well on the land above described ... if said production cessation is for longer than sixty (60) consecutive days and if no drilling operations have been commenced on the land within such period.

The Corrected Assignment also provided "for a term ending November 15, 1980, and for so long thereafter, as to each of the respective tracts ... as oil or gas ... are produced...."

■ Production of a well involves actually taking oil or gas from the well in a captive state for either storing or marketing the product for sale. Williams, *Shut–In Royalty Clause*, 3 Oil and Gas Law, sec. 631 at 395 (1989). The words "so long as" are appropriate to express an automatic termination. The use of these words show the intent that the estate will automatically terminate upon the occurrence of a stated event. Restatement of Property, sec. 44 (1936).

The main purpose for entering into a mineral lease is to obtain production. The courts may generally be opposed to the construction which causes automatic termination, but the policy behind that rule does not apply to leases for oil and gas. Williams, *Habendum Clause*, 3 Oil and Gas Law, sec. 604 (1989). Thus, "a determinable fee estate ... granted upon a special limitation terminates automatically upon the occurrence of the event which constitutes the special limitation as expressed in the grant." *Colby v. Sun Oil Company*, 288 S.W.2d 221 (Tex.Civ.App.—Galveston 1956, writ ref'd n.r.e.).

In conclusion, it is well established in Texas that an oil and gas estate like the present one, which states that it should remain in force during the primary term and as long thereafter as minerals are produced and that it will terminate at the end of the primary term in the absence of production, creates a determinable fee in the land once the specified limiting events occur, *Gulf Oil Corporation v. Reid*, 161 Tex. 51, 337 S.W.2d 267, 269 (1960).

■ While generally forfeitures may not be favored in the law, this is not true when a lease terminates by its own provisions due to a cessation of production. *Woodson Oil Company v. Pruett*, 281 S.W.2d 159, 164 (Tex.Civ.App.—San Antonio 1955, writ ref'd n.r.e.). Appellant admitted there was no production because there was no market. However, the non-availability of a market is not an effective excuse for the failure to produce oil or gas, and therefore the lease will terminate unless a savings provision keeps the lease in force. *Gulf Oil Corporation v. Reid*, 337 S.W.2d at 270. It was not mechanical breakdown that caused production to cease but the unavailability of a market that made production unprofitable. However, unprofitability was not a condition contracted against; thus, this did not prevent the estate from terminating when production ceased.

A trial judge may disregard a jury finding if no support in the evidence exists. *York v. York*, 678 S.W.2d 110 (Tex.App.—El Paso 1984, writ ref'd n.r.e.); Tex.R. Civ.P. 301. Under the facts of the instant case, there was a cessation of production which caused the estate to terminate as a matter of law. Therefore, the issue of waiver was inapplicable and the trial court properly disregarded the jury's answer.

Point of Error No. Three is overruled.

Point of Error No. One asserts that the trial court erred in granting judgment for Appellees because the Corrected Assignment created a condition subsequent and not a determinable fee.

For the reasons already stated, the Corrected Assignment created a determinable fee estate.

Point of Error No. One is overruled.

Point of Error No. Two asserts that the trial court erred in granting judgment for Appellees because Appellant not only pled compliance but did comply with the conditions in the Corrected Assignment whereas Appellees failed to specifically deny any particular condition of non-compliance.

In the case of *Freeman v. Magnolia Petroleum Co.*, 141 Tex. 274, 171 S.W.2d 339 (1943), there was a provision that stated in effect that where there was a producing well, but gas was not being sold, the lease would be considered as producing if an annual royalty was paid by a certain date. The lessee was late with the annual payment of royalty, and the court held the lease terminated because the payment of the royalty was a condition. Since this was not met, the lease terminated as a matter of law. The late tender of the royalty did not revive the lease.

Appellant did not, in the instant case, comply with the conditions and, therefore, the evidence supported the findings of the jury.

Point of Error No. Two is overruled.

Points of Error Nos. Five and Six assert that the trial court erred in granting judgment for Appellees because the Corrected Assignment is ambiguous and allowed payment of shut-in royalty payments to extend the terms of the Corrected Assignment.

Point of Error No. Seven asserts that the trial court erred in granting judgment for Appellees because the Corrected Assignment required notice to Appellant before the term of the Corrected Assignment ended.

The provision in the Corrected Assignment that stated "Reference for all purposes is made to the oil and gas leases described in Exhibit A attached hereto and incorporated herein by this reference" was held by the trial court to be unambiguous. The trial court held that this statement did not have the effect of incorporating the shut-in royalty provisions in those leases into the Corrected Assignment. Appellees attack Appellant's assertion of ambiguity after having judicially admitted and urged to the trial court just the opposite. Appellees state Appellant has waived this complaint because in his Motion for Instructed Verdict, he stated to the trial court that "The document, is, in fact, not ambiguous, needs no serious interpretation and doesn't require any of the continuous production as called for by the Plaintiffs implicit [sic] in their position in this lawsuit." Appellant did not make any affirmative claim in his pleadings of his contention that the Corrected Assignment was ambiguous. Whether a contract is ambiguous is a question of law for the court to decide. *R & P Enterprises v. La Guarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). If no ambiguity exists, the construction of the lease contract is also a matter of law. *City of Pinehurst v. Spooner Addition Water Company*, 432 S.W.2d 515 (Tex.1968); *Clark v. Perez*, 679 S.W.2d 710 (Tex.App.— San Antonio 1984, no writ).

Appellant states that what is ambiguous is the Corrected Assignment that states:

Reference for all purposes is made to the oil and gas leases described in Exhibit A attached hereto and incorporated herein by this reference.

To support Appellant's contentions would have required the incorporation of portions of six separate and different leases referenced, i.e., the shut-in provisions of two leases and the notice provision of another lease. When courts interpret oil and gas leases, their main concern is to decide and give effect to the party's intention. *Myers v. Gulf Coast Minerals Management Corporation*, 361 S.W.2d 193 (Tex. 1962).

However, the trial court held that the Corrected Assignment was unambiguous; that the Corrected Assignment did not incorporate all of the provisions of each lease but merely referenced the exhibit as a description of the leases. The Corrected Assignment incorporated the *exhibit* and only *referenced* the oil and gas leases. Therefore, it also follows that the shut-in royalty payments that were tendered to other than Appellees could not extend the primary term under the Corrected Assignment

which had no provisions for shut-in royalty payments.

Appellant also contends that no notice was given to Appellant of termination as provided in several base leases. The trial court held the base leases were not incorporated into the Corrected Assignment and since the Corrected Assignment did not have notice provisions, then Appellees had no duty to give notice.

Points of Error Nos. Five, Six and Seven are overruled.

■ Point of Error No. Eight asserts the trial court erred in granting judgment for Appellees because the Corrected Assignment did not require a continual relinquishment of tracts after production was obtained for sixty days after completion of the last well.

Point of Error No. Nine asserts the trial court erred in granting judgment for Appellees because the Appellees did not plead and prove any well had been plugged and/or abandoned before the Corrected Assignment terminated.

If no provision to the contrary exists, the general rule applies which allows the lease to be maintained by production from a well which occurs anywhere on the leases. *Humphrey v. Seale,* 716 S.W.2d 620, 622 (Tex.App.—Corpus Christi 1986, no writ). However, the Corrected Assignment has a specific limitation which states: "Following the cessation of such drilling program ... this assignment shall terminate as to each Tract separately upon the termination of production...." It also states:

> Sixty days after the completion of the last well drilled under the drilling program above outlined ... this assignment shall terminate as to, ... in the Land above described insofar as it concerns any of the Tracts above described which are not then producing, and upon cessation of production and the plugging of any well on the land above described, the Tract shall be reassigned by Assignee to Assignors if said production cessation is for longer than sixty (60) consecutive days....

A distinction is drawn between termination of the interest and a reassignment of the record title. Likewise, a "Demand for such release and the making of such release shall not be a prerequisite to the termination of the Assignee's interest upon the cessation of the drilling program...."

The party's intent concerning the Corrected Assignment was to obtain production of the gas wells. The purpose of the document will not be met if the Assignee, Appellant, is allowed to hold on to the assigned estate merely because he did not plug the wells. The estate terminated once production ceased.

Point of Error Nos. Eight and Nine are overruled.

■ Points of Error Nos. Ten and Eleven assert the trial court erred in granting judgment for Appellees because there was no evidence to support the jury's answer to Question No. One and/or the jury's answer to the question was against the great weight and preponderance of the evidence.

Question No. One, the instruction and the answer stated:

> Do you find from a preponderance of the evidence, that between December 1, 1985, and January 1, 1987, that there was a period of at least 60 consecutive days when there was neither production from nor operations for production on the 9 tracts in question?
>
> For purposes of this issue, you shall not consider shut-in gas well payments as "production" or "operations for production."
>
> You are instructed that the term "operations for production" does not include the gathering of gas or other related aspects of gas marketing.
>
> Answer by writing "yes" or "no" beside the quarter sections listed.
>
> Answer: [The charge then listed each of the nine quarter sections with a blank beside each for the jury's answers. The jury answered "yes" in the blanks beside each described nine quarter sections].

■ We find that the evidence supported the jury's answers since the evidence showed that production had ceased

926

for about thirteen months. Appellant argues that a special limitation is a condition subsequent which only applies upon a cessation of the drilling program and not upon completion. However, the special limitation created in the Corrected Assignment is a determinable estate which terminated. Appellant also argues that the court arbitrarily instructed the jury that "operations for production" did not include marketing gas. Operations for production does not encompass a search by the lessee for a market in which to sell gas or an attempt to find a purchaser of gas. *Gulf Oil Corporation v. Reid,* 161 Tex. 51, 337 S.W.2d 267, 272 (1960).

The jury's answer to Question No. One has support in the evidence.

Points of Error Nos. Ten and Eleven are overruled.

■ Point of Error No. Fourteen asserts that the trial court abused its discretion in allowing a trial amendment and third amended petition to be filed on the morning of trial.

Appellant claimed surprise but did not move for a continuance. *National Mortgage Corporation of America v. Stephens,* 723 S.W.2d 759, 762 (Tex.Civ.App.—El Paso 1986), rev'd on other grounds, 735 S.W.2d 474 (Tex.1987). Trial courts have broad discretion to allow pleadings to be filed during the course of trial and liberality is encouraged. Tex.R.Civ.P. 66. We find no abuse of discretion on the part of the trial judge.

Point of Error No. Fourteen is overruled.

Point of Error No. Fifteen asserts the trial court erred in granting judgment for Appellees because Appellant is entitled to attorney's fees if judgment is granted for Appellant. Tex.Civ.Prac. & Rem.Code sec. 37.009 (Vernon 1986).

In a suit for declaratory judgment, attorney's fees are recoverable but Appellant did not win on the merits.

Point of Error No. Fifteen is overruled.

Point of Error No. Twelve asserts the trial court erred in granting judgment for the Appellees because there were no pleadings to support the submission of Question No. One to the jury.

■ Submission of questions for a jury charge must be raised in the pleadings and the questions control the disposition of the case. *Texas Employers Insurance Association v. Alcantara,* 764 S.W.2d 865, 867 (Tex.App.—Texarkana 1989, no writ). At the time of submission of the court's charge to the jury, the Appellees' pleadings and the evidence justified the trial court's submission of Question No. One.

Point of Error No. Twelve is overruled.

■ Point of Error No. Thirteen asserts error in the trial court's granting judgment because Question No. One is not a controlling issue. Tex.R.Civ.P. 278 requires the trial court to submit controlling issues raised by the pleadings and the evidence. A controlling issue is a question which will support a judgment for the proponent if it is answered favorably. *Gomez v. Franco,* 677 S.W.2d 231, 234 (Tex.App.—Corpus Christi 1984, no writ). Question No. One meets the requirement of being a controlling question.

Point of Error No. Thirteen is overruled.

■ Point of Error No. Four asserts Question No. Two on estoppel was erroneous, and the court erred in not submitting Appellant's requested question and instruction on estoppel.

Question No. Two as submitted stated: Do you find from a preponderance of the evidence that Plaintiff's [sic] are "estopped" to complain that the Corrected Assignment terminated, if it did terminate?

The trial court then under such question instructed the jury:

In order to constitute an estoppel there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was

made must have relied on or acted on it to his prejudice.

The jury was asked to answer "Yes" or "No" and they answered "No."

Therefore, the Appellees were found not to be estopped from complaining that the Corrected Assignment terminated. We find that the trial court's charge on estoppel comports with the definition set forth by our Supreme Court in *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (Tex.1952). We find no error in the trial court's submission of the question and instruction.

Point of Error No. Four is overruled.

We affirm the judgment of the trial court.