

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00081-CV

FAIN FAMILY FIRST LIMITED
PARTNERSHIP AND FAIN FAMILY
MANAGEMENT CORPORATION

APPELLANTS

V.

EOG RESOURCES, INC.

APPELLEE

----------

### FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In five issues, Appellants Fain Family First Limited Partnership and Fain

Family Management Corporation (collectively, FFFLP) appeal the trial court's

---

[1]*See* Tex. R. App. P. 47.4.

summary judgment for Appellee EOG Resources, Inc. We affirm in part and reverse and remand in part.

## II. Background

In 2004, FFFLP and EOG entered into a "paid–up" oil and gas lease and an A.A.P.L. Form 610–Model Form Operating Agreement–1989 (JOA) to develop minerals under FFFLP's property in Somervell County. Under the JOA's terms, FFFLP could elect to participate in EOG's efforts to develop the minerals by paying 1/8th of the development costs.

On May 2, 2007, FFFLP agreed to participate in drilling the Fain 1H[2] well, and on November 7, 2007, it agreed to participate in the Fain 4H well. EOG drilled the wells and sent invoices to FFFLP. When FFFLP failed to pay these invoices, EOG filed a suit on sworn account, also alleging breach of contract. In FFFLP's verified first amended answer, it defended itself against EOG's breach of contract claim by claiming that the JOA had been modified by oral agreement, denied the elements of EOG's sworn account claim, and counterclaimed for breach of contract, fraud, fraud by nondisclosure, breach of fiduciary duty, breach of the duty to act as a reasonably prudent operator, breach of the duty to reasonably develop the lease, and negligent misrepresentation.

EOG filed a traditional motion for partial summary judgment on its sworn account and breach of contract claims, which the trial court granted in part after

---

[2]This well is distinct from the Fain A Unit #1H well, also known as Fain 3H, discussed below.

reducing EOG's requested damages by an amount that FFFLP claimed was erroneously and fraudulently billed. EOG then filed a combined motion for (1) traditional summary judgment on its claims, seeking to recover the amount denied in the prior summary judgment, and (2) no-evidence summary judgment on FFFLP's counterclaims. FFFLP subsequently filed an unverified second amended answer containing the same defense, denial, and counterclaims included in its first amended answer, amending its modification defense to include payment waiver, and adding a fraudulent inducement counterclaim. The trial court granted EOG's final summary judgment motion without specifying the grounds. This appeal followed.

### III. Summary Judgment

In five issues,[3] FFFLP complains that the trial court erred by granting summary judgment for EOG because (1) the final summary judgment order is based on grounds that EOG did not raise; (2) fact issues regarding EOG's claims remain; (3) EOG was not entitled to summary judgment on quasi-estoppel grounds because it took inconsistent positions as to the JOA; (4) FFFLP's verified denial was sufficient to deny EOG's sworn account claim;[4] and (5) EOG

---

[3]At oral argument, we vacated our prior order denying FFFLP's request to file an amended brief, agreed to treat FFFLP's reply brief as its amended brief, and permitted EOG to file a supplemental appellee's brief. FFFLP's fourth and fifth issues address EOG's arguments in its original appellee's brief.

[4]EOG argues that we may affirm the trial court's judgment on the basis of FFFLP's unverified second amended answer. EOG, however, failed to move for

3

waived any complaint about the affidavit attached to FFFLP's response to EOG's motion for partial summary judgment.[5]  We review summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

## A.  EOG's Motion for Partial Summary Judgment

In a traditional summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  A traditional summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a

---

summary judgment on this ground.  Because we can only affirm a summary judgment on grounds sought by the movant, we do not address EOG's argument. *See Robinson v. Tex. Timberjack, Inc.*, 175 S.W.3d 528, 530 (Tex. App.—Texarkana 2005, no pet.) (holding that summary judgment could not be affirmed on the basis of the nonmovant's unverified denial because the movant failed to move for summary judgment on this ground); *see also Shumate v. Shumate*, 310 S.W.3d 149, 152 (Tex. App.—Amarillo 2010, no pet.) (citing *Casso v. Brand*, 776 S.W.2d 551, 553 (Tex. 1989), and holding that all theories supporting or opposing a summary judgment motion must be presented to the trial court).

[5]On appeal, EOG complains that Rickey Fain's affidavit was insufficient to support FFFLP's response to EOG's motion for partial summary judgment because it did not contain an affirmation that the facts stated were "true and correct," and it contained conclusory assertions.  We need not address these arguments, however, because we do not rely on Fain's affidavit in our disposition of this appeal.  *See* Tex. R. App. P. 47.1.

4

matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

We examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008); *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

Therefore, as stated in EOG's motion for partial summary judgment, to prevail on its breach of contract claim on traditional summary judgment, EOG had to prove (1) that the parties had a valid, enforceable contract; (2) that it performed or tendered performance of its contractual obligations; (3) that FFFLP breached the contract; and (4) that FFFLP's breach caused EOG's injuries. *See Shin v. Sharif*, No. 02-08-00347-CV, 2009 WL 1565028, at *5 (Tex. App.—Fort Worth June 4, 2009, no pet.) (mem. op.).

5

As also stated in its motion for partial summary judgment, to prevail in its suit on a sworn account on traditional summary judgment, EOG had to prove (1) that it sold and delivered merchandise or performed services; (2) that the charges on the account were "just and true," proof of which may be shown by express agreement or, absent an agreement, by evidence that the charges are "usual, customary, or reasonable"; and (3) that the amount was unpaid.[6] *See Naan Props., LLC v. Affordable Power, LP*, No. 01-11-00027-CV, 2012 WL 114201, at *6 (Tex. App.—Houston [1st Dist.] Jan. 12, 2012, no pet.) (mem. op.); *Melton v. Karl Klement Ford, L.P.*, No. 02-06-00051-CV, 2006 WL 2627380, at *5 (Tex. App.—Fort Worth Sept. 14, 2006, no pet.) (mem. op.).

## 1. The Lease Term

FFFLP argues in its second issue that a fact question remains as to whether the lease continued past the primary term. Specifically, FFFLP claims that the lease expired on June 22, 2007, from nonproduction and that EOG billed

---

[6]EOG moved for final summary judgment on its breach of contract and sworn account claims by incorporating its prior motion for partial summary judgment. EOG presented no additional evidence to support its motion for final summary judgment on these claims but asked only that the trial court grant summary judgment on the remaining sum of money that the court withheld from its judgment on EOG's partial summary judgment motion. Thus, our disposition of EOG's partial summary judgment on its claims also disposes of its final summary judgment on these same claims. Further, although FFFLP did not raise the lease termination issue in its response to EOG's motion for partial summary judgment, it did so in its response to EOG's final summary judgment motion. Because EOG's claims against FFFLP were incorporated into its final summary judgment motion by reference, we may consider FFFLP's lease termination argument to defeat EOG's partial summary judgment motion.

6

it for operational expenses incurred after that date. FFFLP argues that this lease expiration question raises a genuine issue of material fact as to whether the amounts billed by EOG are "just and true." FFFLP further argues that genuine issues of material fact remain as to whether the parties had a valid, enforceable contract when it agreed to participate in the Fain 4H well and when EOG incurred the expenses it billed to FFFLP.

EOG argues that the lease expiration date is immaterial to the validity of FFFLP's debt because FFFLP's obligation attached before the JOA terminated and the JOA provides that termination of the agreement does not affect obligations that attached before JOA termination.[7]

### a. Lease Terms and JOA Termination

JOA termination in this case is tied to lease expiration. Specifically, Article XIII of the JOA provides that

> [t]his agreement shall remain in full force and effect as to the Oil and Gas Leases and/or Oil and Gas Interests subject hereto for the period of time selected below; provided, however, no party hereto shall ever be construed as having any right, title or interest in or to any Lease or Oil and Gas Interest contributed by any other party beyond the term of this agreement.

From the period-of-time options available under Article XIII, the parties chose the option that states, "So long as any of the Oil and Gas Leases subject to this

---

[7]EOG moved for summary judgment based solely on the JOA and lease as evincing the parties' agreement. EOG did not claim that FFFLP's agreement to participate in the wells obligated FFFLP to pay for expenses incurred after JOA termination and it did not claim that the signed agreements to participate operated as stand-alone agreements.

agreement remain or are continued in force as to any part of the Contract Area, whether by production, extension, renewal or otherwise." And the lease habendum clause in this case states that the lease "shall be for a term of three (3) years . . . and as long thereafter as oil and gas, or either of them, is produced in paying quantities from the Leased Premises."

The lease continuous drilling clause permitted EOG to hold the lease past the primary term without production if it was "engaged in drilling operations" at the end of the primary term or if it "commence[d] and continue[d] a program of continuous drilling" within 120 days of the end of the primary term or the completion of the well being drilled at that time.

Finally, the shut-in royalty clause states,

> If, after the expiration of the primary term, there is located on the Leased Premises a well capable of producing gas in commercial quantities, but the gas is not being sold due to lack of market, and this Lease is not being otherwise maintained in force, then *the Lessee may pay* as a shut-in royalty a sum of money equal to $5.00 per acre for each acre in such well's Producing Unit . . . for the period commencing on the date the well is shut-in. The first amount will be due not later than ninety (90) days after the date the well is shut-in, and subsequent payments will be due annually thereafter . . . on the anniversary date of the period for which the prior payment was made. Upon proper and timely payment of shut-in royalty under this paragraph, *it will be considered that gas is being produced* from the well that is shut-in. [Emphasis added.]

This clause combines an optional payment with constructive production. *See Blackmon v. XTO Energy*, 276 S.W.3d 600, 605–07 (Tex. App.—Waco 2008, no pet.).

8

### b. Applicable Law

An oil and gas "lease may be kept alive after the primary term only by production in paying quantities, or a savings clause, such as a shut-in gas well clause, drilling operations clause, or continuous operations clause." *Hydrocarbon Mgmt., Inc. v. Tracker Exploration, Inc.*, 861 S.W.2d 427, 432 (Tex. App.—Amarillo 1993, no writ). Courts construe shut-in royalty clauses strictly, and the lease language determines whether a failure to pay shut-in royalties will terminate a lease. *See, e.g., Blackmon*, 276 S.W.3d at 605–07. If the lease "'makes proper payment the constructive production, then if the payment is not made correctly the lease terminates.'" *See id.* at 607 (quoting Owen L. Anderson et al., *Hemingway Oil and Gas Law and Taxation* § 6.5, at 278 (4th ed. 2004)). Thus, when the shut-in royalty clause couples an optional payment with a provision stating that "it will be considered that gas is being produced" if the payment is made, the lessee must make timely payment or the lease will terminate. *Marifarms Oil & Gas, Inc. v. Westhoff*, 802 S.W.2d 123, 125–26 (Tex. App.—Fort Worth 1991, no writ) (citing *Freeman v. Magnolia Petroleum Co.*, 141 Tex. 274, 171 S.W.2d 339 (Tex. 1943)). Furthermore, a lessee cannot revive an expired lease through an untimely shut-in royalty payment. *See Gulf Oil Corp. v. Reid*, 161 Tex. 56, 337 S.W.2d 267, 271 (Tex. 1960).

9

Here, the shut-in royalty clause, as set out above, is the same type we considered in *Westhoff*;[8] therefore, failure to pay timely would result in lease termination. *See* 802 S.W.2d at 126.

### c. Analysis

The parties entered into the lease and JOA on June 22, 2004. Thus, the lease would expire at the end of its primary term on June 22, 2007, unless (1) there was production from the lease; (2) EOG was drilling a well; or (3) EOG had drilled a well by October 20, 2007—within 120 days of the end of the primary term. Once the lease expired, the JOA would terminate. *See Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 553 (Tex. App.—San Antonio 2011, no pet.) (holding that a JOA with a term provision similar to the term provision in this case terminated automatically when the underlying lease expired). Although both parties agree that the lease has expired, they do not agree as to when.

Therefore, we must review whether the record reflects that EOG held the lease past the end of the primary term by production or had wells on the lease that were capable of production and timely paid shut-in royalties, preventing the JOA from terminating before FFFLP agreed to participate in the Fain 4H well and before EOG incurred the expenses that it billed to FFFLP.

---

[8]We noted in *Westhoff* that the shut-in royalty clause provided that "the lessee *may* pay an annual royalty equal to the amount of the delay rentals . . . and if such payment is made, it shall be considered under all provisions of the lease that gas is being produced in paying quantities for one year from the date of payment." 802 S.W.2d at 125.

10

### (1) Production during the Primary Term

EOG admitted in its motion for partial summary judgment and on appeal that the wells were not productive. In its reply to FFFLP's response to EOG's motion for final summary judgment, EOG stated that it did not know whether the Fain 1H well was producing on November 7, 2007, when FFFLP agreed to participate in the Fain 4H well. Indeed, the only evidence that the wells were ever productive was a June 30, 2008 email attached to FFFLP's response to EOG's motion for final summary judgment, in which EOG Landman Taylor Fry told Rickey Fain, "Yes, both wells are productive." However, railroad commission production reports also attached to FFFLP's response show that EOG reported no production from either well from December 2006 to December 2011. Furthermore, Fry's email was sent over eleven months after the date on which the primary term would have expired from nonproduction, and EOG offered no evidence that any well was productive at the end of the primary term.

Additionally, EOG attached no evidence to its traditional summary judgment motion to show that it was engaged in drilling operations at the end of the primary term. The only evidence in the record regarding lease operations at that time is invoices that FFFLP attached to its response to EOG's motion for partial summary judgment. The invoices were for materials and services that EOG used in building a location for the Fain 3H well—a well in which FFFLP was not participating. The lease's continuous drilling provision defines "commencement of drilling operations" as the date on which the lessee "begins

11

operations such as building a location and the subsequent moving in of a drilling rig" if drilling begins within sixty days from the date on which operations commenced. Given that these invoices relate only to materials and services provided for building the Fain 3H location, they are insufficient to show that EOG had "commenced drilling operations" on this well or any well in which FFFLP had agreed to participate because there is nothing in the record to show that EOG began drilling within sixty days of the date on which it began constructing a location for the Fain 3H well. Thus, a fact question remains as to whether the lease expired from nonproduction on June 22, 2007, or whether the wells were capable of production as set out below.

### (2) Wells Capable of Production

Assuming that EOG held the lease past the end of the primary term, there is conflicting evidence as to whether any well was ever capable of production.

A well is capable of production in paying quantities only if it would produce in "paying quantities" when "turned 'on,' . . . without additional equipment or repair." *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 558–59 (Tex. 2002) (op. on reh'g) (quoting *Hydrocarbon*, 861 S.W.2d at 433–34). A well produces in "paying quantities" when it is reasonable to expect "profitable returns" from the well. *Id.* at 559 (quoting *Clifton v. Koontz*, 160 Tex. 89, 325 S.W.2d 684, 691 (Tex. 1959)). Further, a lack of "facilities for marketing the gas" is sufficient to show that a well is not capable of production in "paying quantities."

12

*Id.* at 559 (noting that facilities for marketing gas do not exist when an operator cannot justify the cost of constructing a pipeline).

Rick Dollins of EOG confirmed in a May 1, 2008 email to Fain, which FFFLP also attached to its response to EOG's motion for final summary judgment, that the wells were not producing enough gas to justify the cost of attaching them to an existing pipeline running across the lease property. This implies that the wells were not capable of production because EOG had no "facilities for marketing the gas." *See id.* And although Fry told Fain in a June 25, 2008 email, "EOG is currently operating under the shut-in provisions of the lease. Shut-in payments were made towards the end of March for both wells, in keeping with the lease provisions[,]" she then stated, "We continue to be hopeful for the future development of your ranch, and [we] are seeing some positive results in similar situations with the new technology that has developed in the Barnett." Two days later, Fry also told Fain that "neither well on the property has been hooked up to pipeline," making it unclear whether the wells could produce "in paying quantities" when "turned on."[9] Thus, there appears to be a fact question as to whether EOG ever had a well on the lease that was capable of production.

---

[9]Under the shut-in royalty provision, EOG could have held the lease beyond the primary term if there was a well on the lease that was capable of production and EOG timely paid shut-in royalties to FFFLP.

### (3) Shut-In Royalty Payment

Even assuming that there was a well on the lease that was capable of production after the end of the primary term, EOG would have had to pay shut-in royalties within ninety days from the date on which the well was shut in to avoid lease expiration and JOA termination.

The evidence in the record indicates that EOG paid shut-in royalties on March 12, 2008. However, there is no evidence that EOG shut in a well that was capable of production within the ninety days preceding March 12, 2008. Given that the payments were made over five months after the end of the primary term, and considering the conflicting evidence regarding whether EOG had a well that was capable of production and the lack of evidence regarding shut-in dates, a fact question remains as to whether EOG timely paid shut-in royalties.

### (4) EOG's Invoices

Nonetheless, EOG argues on appeal that the lease termination date is immaterial because FFFLP's liability attached in 2007. Indeed, EOG claimed in its motion for partial summary judgment that "[a]ll of the invoices at issue were dated in 2007."

In support of its motion for partial summary judgment, EOG attached copies of the invoices dated July 2007 through December 2010 that it sent to FFFLP. EOG also attached the affidavit of EOG's Accounting and Administrative Manager Kathy Donaldson, in which Donaldson stated that the invoices

14

represent the amounts FFFLP owed to EOG under the JOA and that the amounts were "just and true."

The invoices for July, August, and September 2007, however, contain only charges and credits relating to the Fain A Unit #1H well—a well in which FFFLP did not participate. Charges for the Fain 1H and Fain 4H wells in which FFFLP agreed to participate first appear in the November 2007 invoice and continue through the December 2010 invoice.

Considering the questions above concerning whether the lease expired at the end of the primary term on June 22, 2007, a genuine issue of material fact remains as to whether the parties were operating under a valid JOA when EOG incurred the expenses represented in the invoices.[10]

Further, although EOG claimed in its motion for partial summary judgment that only the 2007 invoices were at issue, EOG also claimed that FFFLP owed a principal debt of $449,643.54. Yet the December 2007 invoice shows a balance due of $292,311.60, and EOG offered no evidence to explain this discrepancy. This raises an additional fact question as to the actual amount of EOG's sworn account.

---

[10]The JOA does not state whether a nonoperator's obligation to pay its share of development costs accrues when it agrees to participate or when the costs in question are incurred, and the parties did not argue this issue in the trial court or present it for our review here.

15

## 2. Conclusion

In light of the questions surrounding whether EOG held the lease past the end of the primary term by production, whether EOG had wells on the lease that were capable of production, and whether EOG timely paid shut-in royalties, genuine issues of material fact remain as to whether the JOA terminated before FFFLP agreed to participate in the Fain 4H well and before EOG incurred the expenses that it billed to FFFLP. Thus, as to its breach of contract claim, EOG has failed to carry its summary judgment burden of proof that the parties had a valid, enforceable JOA when it incurred the expenses that it billed to FFFLP. *See* Tex. R. Civ. P. 166a(c).

In its motion for partial summary judgment, EOG also asserted as part of its breach of contract claim that the JOA audit provision barred FFFLP from disputing the charges that EOG sought to recover. EOG also made this same assertion as part of its no-evidence summary judgment motion on FFFLP's breach of contract claim. EOG argued that FFFLP was contractually barred from challenging the validity of EOG's invoices because it failed to contest the invoices within the twenty-four month window provided by the JOA audit provision. Because this assertion is based on the JOA audit provision, it is predicated on whether the JOA was applicable at the time the charges were incurred. Given that genuine issues of material fact exist as to whether the parties had a valid JOA at the time the charges were incurred, we hold that EOG failed to carry its

16

summary judgment burden of proof that the JOA audit provision barred FFFLP from disputing the invoices.[11]  *See id.*

Further, EOG offered no evidence that the amounts it billed to FFFLP were "usual, customary, or reasonable."  *See Naan*, 2012 WL 114201, at *6.  To prove that the amounts billed to FFFLP were "just and true," EOG offered only the JOA, lease, invoices, and Donaldson's affidavit.  Because a genuine issue of material fact exists as to the validity of the lease and JOA at the time EOG incurred the expenses reflected in the invoices, however, a genuine issue of material fact remains as to whether the amounts EOG charged FFFLP were "just and true." *See Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 303–04 (Tex. App.—El Paso 1996) (holding that the plaintiff suing on sworn account failed to carry its burden of proof that the amount was just when it offered no evidence beyond the agreement and the defendant raised a fact issue as to the validity of the agreement), *aff'd*, 966 S.W.2d 482 (Tex. 1998).  Thus, as to its suit on sworn account, EOG failed to carry its summary judgment burden of proof that the amounts billed were "just and true."  *See* Tex. R. Civ. P. 166a(c).  Because EOG failed to prove all essential elements of its suit on sworn account and its

---

[11]EOG also leverages FFFLP's agreement to the JOA audit provision in the quasi-estoppel defense it moved upon in its traditional motion for final summary judgment.  EOG argued that FFFLP was estopped from taking a position inconsistent with the JOA audit provision by challenging EOG's invoices via its counterclaims.  EOG has failed to carry its summary judgment burden on this defense for the same reasons discussed above.  *See* Tex. R. Civ. P. 166a(c).

breach of contract claim as a matter of law, we sustain this portion of FFFLP's second issue. *See id.*; *City of Houston*, 589 S.W.2d at 678.

## B. EOG's Motion for No-Evidence Summary Judgment

In its motion for final summary judgment, EOG moved for a no-evidence summary judgment on FFFLP's counterclaims for fraud, fraud by nondisclosure, negligent misrepresentation, and breach of contract. The trial court granted EOG's motion and dismissed all of FFFLP's counterclaims.

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus.*, 286 S.W.3d at 310. The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton*, 249 S.W.3d at 426. If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

When, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and

18

preserved for appellate review are meritorious. *Knott*, 128 S.W.3d at 216; *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). When the trial court's judgment rests upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on the ground to which no complaint is made. *Scott v. Galusha*, 890 S.W.2d 945, 948 (Tex. App.—Fort Worth 1994, writ denied).

FFFLP complains in its second issue that the trial court erred by granting EOG's motion for final summary judgment because genuine issues of material fact remain on its counterclaims and in its first issue that the final summary judgment grants more relief than EOG requested.

### 1. FFFLP's Negligent Misrepresentation Claim

Because FFFLP does not appeal the trial court's judgment on its negligent misrepresentation claim, we affirm the trial court's judgment on this claim. *See id.*

### 2. FFFLP's Fraudulent Inducement Claim

FFFLP claims on appeal that a fact issue remains regarding whether EOG fraudulently induced FFFLP to participate in the Fain 4H well.[12] Specifically,

---

[12]FFFLP pleaded fraud and fraud by nondisclosure in both its first and second amended answers and added a claim for fraudulent inducement in its second amended answer. However, in its motion for final summary judgment, filed before FFFLP's second amended answer, EOG addressed only the fraud claims included in FFFLP's first amended answer. Although we must generally reverse a judgment when a movant fails to amend or supplement its pending motion for summary judgment to address newly added claims and avoid granting

19

FFFLP argues that EOG allegedly represented to FFFLP that it would drill one well at a time based on production but that it drilled the Fain 4H well—in which FFFLP had agreed to participate—even though it never obtained production from the Fain 1H well. FFFLP claims that this action, in conjunction with EOG's conflicting representations regarding the Fain 1H well production, raises a fact question as to whether EOG fraudulently misrepresented lease production to induce FFFLP to participate in the Fain 4H well. FFFLP, however, has failed to address on appeal all of the grounds on which the trial court could have granted the summary judgment on this claim, namely, EOG's assertion that FFFLP had no evidence that it intended to induce FFFLP or that it made the alleged misrepresentations knowing they were false or with reckless disregard for their falsity.[13] Therefore, we overrule this portion of FFFLP's second issue. *See id.*

more relief than requested, we need not do so when the movant has proved that it is entitled to summary judgment on an addressed claim from which the unaddressed claim is derived. *See West v. Northstar Fin. Corp.*, No. 02-08-00447-CV, 2010 WL 851415, at *5 (Tex. App.—Fort Worth Mar. 11, 2010, pet. denied) (mem. op.). Because FFFLP's fraudulent inducement claim is derived from its fraud and fraud by nondisclosure claims that EOG addressed, we may address this claim. *See id.*

[13]A party commits fraud by making a false, material misrepresentation that the party either knows to be false or asserts recklessly without knowledge of its truth with the intent that the misrepresentation be acted upon, and the person to whom the misrepresentation is made acts in reliance upon it and is injured as a result. *All Am. Tel., Inc. v. USLD Comm'cns, Inc.*, 291 S.W.3d 518, 527 (Tex. App.—Fort Worth 2009, pet. denied). EOG moved for summary judgment on the grounds that FFFLP had no competent evidence that (1) it made any "false material representations"; (2) it "made material representations knowing that they

20

### 3. FFFLP's Breach of Contract Claim

FFFLP also asserts on appeal that a fact issue remains as to whether EOG breached the JOA as modified by the parties. Specifically, FFFLP claims that the parties modified the JOA via an email in which Dollins told Fain that "[s]ubsequent wells would not be drilled until we have seen some production" and that EOG breached the modified JOA by drilling the Fain 4H well before the Fain 1H well was productive. In its final summary judgment motion, one of EOG's grounds was that FFFLP could produce no evidence that the parties had modified the JOA; EOG argues on appeal that FFFLP has produced no evidence of additional consideration to support its modification claim. FFFLP argues that its agreement to participate in the Fain 4H well is evidence of additional consideration.

Contract modifications require new consideration and the same mutuality of consent found in the original contract. *See Williams v. L.M.S.C., Inc.*, No. 01-03-00924-CV, 2005 WL 2469876, at *6 (Tex. App.—Houston [1st Dist.] Oct. 6, 2005, pet. denied) (mem. op.) (op. on reh'g); *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 113 (Tex. App.—El Paso 1997, pet. denied). Consideration is a "present exchange bargained for in return for a promise." *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 474 (Tex. App.—Fort Worth 2004, no pet.)

---

were false or recklessly, without knowledge of their truth"; and (3) it intended any "alleged non-disclosure to induce [FFFLP] to action or inaction."

(quoting *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991)). "The [promisee's] detriment must induce the making of the promise, and the promise must induce the incurring of the [promisee's] detriment." *Roark*, 813 S.W.2d at 496. "A contract that lacks consideration, lacks mutuality of obligation and is unenforceable." *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997), *superseded by statute on other grounds as stated in Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *see also City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 725 (Tex. App.—Fort Worth 2008, pet. dism'd).

The record reflects that FFFLP produced no evidence that its alleged detriment—agreeing to participate in the Fain 4H well—was consideration for EOG's alleged promise to drill one well at a time. *See Fed. Sign*, 951 S.W.2d at 409. Further, after the email exchange in question, FFFLP agreed to participate in both wells and pay 1/8th of the development costs under the terms of the written JOA. In the proposal letters attached to the participation agreements that Fain signed, EOG specifically stated that the proposals were offered "[p]ursuant to the terms of that certain Joint Operating Agreement ('JOA') dated June 22, 2004." Thus, the proposal letters demonstrate that there was no mutuality of

22

consent to modify the JOA, *see Hill*, 964 S.W.2d at 113, and FFFLP does not claim that EOG breached the written JOA by drilling the Fain 4H well.[14]

Thus, FFFLP has produced less than a scintilla of evidence to show that the parties modified the JOA and that EOG breached the modified JOA when it drilled the Fain 4H well. *See Smith*, 288 S.W.3d at 424. We overrule this remaining portion of FFFLP's second issue.

### 4. FFFLP's Unaddressed Counterclaims

As noted above, FFFLP argues in its first issue that the trial court granted more relief than EOG requested because EOG's motion for final summary judgment did not address FFFLP's defenses of contract modification and waiver, or its counterclaims for rescission, breach of informal fiduciary duty, breach of the duty to act as a reasonably prudent operator, and breach of the duty to reasonably develop the lease.[15] EOG argues that it moved on all of FFFLP's counterclaims in its motion for final summary judgment by asking the trial court to dismiss "Defendants' counterclaims on either traditional or no-evidence grounds."

---

[14]FFFLP claimed in its second amended answer that EOG breached the JOA as written by failing to answer lease operation questions in a reasonable time. However, FFFLP did not raise this issue on appeal. *See* Tex. R. App. P. 38.1.

[15]Rescission is an equitable remedy to set aside an otherwise legal contract for fraud, mistake, or other reasons and is generally used when monetary damages would be inadequate. *See City of The Colony*, 272 S.W.3d at 732. Although FFFLP does not state its basis for seeking rescission in its second amended answer, fraud is the only ground pleaded by FFFLP that would support rescission, and EOG addressed this ground in its motion for final summary judgment.

"Granting a summary judgment on a claim not addressed in the summary judgment motion . . . is, as a general rule, reversible error." S*ee G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011). To obtain reversal of a judgment based upon an error in the trial court, the appellant must show that the error occurred and that it probably caused rendition of an improper judgment or probably prevented the appellant from properly presenting the case to this court. Tex. R. App. P. 44.1(a); *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 225 (Tex. 2005).

At the outset, we hold that EOG's general motion to dismiss FFFLP's claims on "either traditional or no-evidence grounds" is insufficient to meet the requirements of rule 166a(c) of the rules of civil procedure requiring the movant to specifically state the grounds moved upon, *see* Tex. R. Civ. P. 166a(c); *Cunningham v. Blue Cross Blue Shield of Tex.*, No. 02-06-00363-CV, 2008 WL 467399, at *3 (Tex. App.—Fort Worth Feb. 21, 2008, pet. denied) (mem. op.) (op. on reh'g), and rule 166a(i) requiring the movant to specifically state the elements for which there is no evidence, *see* Tex. R. Civ. P. 166a(i); *LaRue v. Chief Oil & Gas, L.L.C.*, 167 S.W.3d 866, 873 (Tex. App.—Fort Worth 2005, no pet.). Thus, we will review FFFLP's complaint in light of the grounds upon which EOG specifically moved. *See G & H Towing Co.*, 347 S.W.3d at 297.

### a. FFFLP's Breach of the Duty to Reasonably Develop Claim

FFFLP counterclaimed that EOG breached its duty to it as a royalty interest owner to reasonably develop the lease. Despite providing a detailed

24

response to FFFLP's counterclaims for fraud, fraud by nondisclosure, negligent misrepresentation, and breach of contract in the no-evidence portion of its motion for summary judgment, EOG did not state a ground on FFFLP's counterclaim for breach of the duty to reasonably develop the lease.

This duty becomes active only after production is secured, *see Grayson v. Crescendo Res., L.P.*, 104 S.W.3d 736, 739 (Tex. App.—Amarillo 2003, pet. denied), and may be expressed or implied in the lease, *see Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 567 (Tex. 1981) (recognizing an implied covenant to develop in the absence of an express covenant). Indeed, the lease here expressly stated that "[i]f oil or gas is discovered on the land covered by this Lease, Lessee agrees to further develop said land covered by this Lease as a reasonably prudent operator." Because a fact question remains as to whether there was ever production from the lease, this claim is not precluded as a matter of law and is not subject to the harmless error exception. *See G & H Towing Co.*, 347 S.W.3d at 297. Because EOG failed to move on this counterclaim, the trial court erred by dismissing it, *see id.*, and we sustain FFFLP's first issue with respect to this claim.

### b. FFFLP's Remaining Claims

FFFLP argues that EOG did not move for summary judgment on its JOA modification and payment waiver defenses. However, EOG moved on FFFLP's modification defense by expressly denying that the parties modified the JOA.

Further, FFFLP brought forth less than a scintilla of evidence that the parties modified the JOA, nullifying its payment waiver argument as well.[16]

FFFLP also argues on appeal that EOG failed to address its claim that EOG breached informal fiduciary duties, including the duty to act as a reasonably prudent operator and the duty of good faith and fair dealing. In its second amended answer, FFFLP claimed that operator EOG owed a fiduciary duty to "non-operator investor[]" FFFLP and that EOG had a fiduciary duty to act as a reasonably prudent operator and owed FFFLP a duty of good faith and fair dealing.

In its final summary judgment motion, EOG denied owing any fiduciary duties to FFFLP under the lease or the JOA. In fact, EOG correctly noted that the JOA expressly denied any fiduciary duties between the parties.[17] EOG also asserted in its final summary judgment motion that it would not address FFFLP's allegation that it breached the duty of good faith and fair dealing because the relationship between a lessor and a lessee in an oil and gas lease is not the type

---

[16]FFFLP's payment waiver defense falls under its modification defense because it claimed that the parties' modifications included a waiver of the payment provisions detailed in the written JOA accounting procedure.

[17]EOG cited *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Co.* for the proposition that courts are unlikely to find an informal fiduciary relationship between oil and gas lessors and lessees because each party is motivated by profit and there is no element of trust. *See* 823 S.W.2d 591, 594 (Tex. 1992), (holding that contracting business parties do not share the kind of trust necessary to create a confidential relationship giving rise to informal fiduciary duties), *superseded by statute on other grounds as stated in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002).

26

of special relationship giving rise to such a duty. Thus, we hold that EOG sufficiently raised grounds as to these claims.

FFFLP responded to EOG's claim that it owed no fiduciary duties to FFFLP by claiming that EOG owed a fiduciary duty to disclose information to its partner FFFLP. However, the JOA expressly disclaimed any special relationship between the parties, including partnership. FFFLP also responded to EOG's claim that it owed no duty of good faith and fair dealing by correctly pointing out that, although it may not owe the duty as lessee, it did owe the duty under the JOA. On appeal, however, FFFLP complains only that EOG failed to move on these grounds in its motion for final summary judgment. Having held that EOG moved on these grounds, we overrule the remainder of FFFLP's first issue. *See Scott*, 890 S.W.2d at 948.

## IV. Conclusion

Having sustained FFFLP's second issue as to EOG's claims, we reverse this portion of the trial court's judgment and remand those claims to the trial court. Having sustained part of FFFLP's first issue regarding its claim that EOG breached its duty to reasonably develop the lease, we also reverse the portion of the trial court's judgment on this claim and remand it to the trial court. Having overruled the remainder of FFFLP's dispositive issues, we affirm the remainder of the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: GARDNER, MCCOY, and GABRIEL, JJ.

DELIVERED: April 18, 2013

28